### BILES et al. v. GANDY.

(Circuit Court of Appeals, Fifth Circuit. January 31, 1922.)

#### No. 3746.

Specific performance ⬤≈119—Plaintiff, suing to enforce sale contract, in which he agreed to procure release from third person, must show his ability to perform, if not prevented by defendant's acts.

Where defendant contracted to sell plaintiff an interest in oil, gas, and mineral rights owned by her and her two sisters, and which were then in litigation with L., one of the conditions of the contract being that plaintiff would procure a release from L., and L. thereafter made a release as to the interests of all three sisters before plaintiff had procured any enforceable agreement with him, plaintiff was not entitled to specific performance, without showing that he would have obtained the release, if defendant and her sisters had not made such settlement, and that his inability to perform was caused by such settlement.

Appeal from the District Court of the United States for the Western District of Louisiana; George W. Jack, Judge.

Suit by William S. Biles and others against Lessie Shaw Gandy. From a decree for defendant, plaintiffs appeal. Affirmed.

William H. Hawkins, of Homer, La., and Joseph Moore, of Shreveport, La. (Moore, Johnson & Boatner, of Shreveport, La., on the brief), for appellants.

S. L. Herold and C. H. Lyons, both of Shreveport, La. (Thigpen, Herold & Lee and Wallace, Lyons & Wallace, all of Shreveport, La., on the brief), for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. The relief sought by the bill filed by the appellants was the specific enforcement of a written contract whereby the appellee agreed to sell a one-half interest in her undivided oil, gas, and mineral rights in described land to George R. Slentz, one of the appellants, who, in making that contract, was acting for himself and as agent for the other appellants. That contract was entered into after the appellee and her two sisters, in a suit brought by them against one Langston in a Louisiana state court, had been decreed to be the owners of a described interest in said land, then under lease and producing oil, and while that suit was pending in the Supreme Court of Louis-

iana on an appeal by Langston. The contract stated the consideration of the sale to be that appellee was to receive $65,000, to be paid out of oil already run or to be run from said land, that she was to be paid "whatever income tax will be due the government by virtue of the income of this sale, to be based on the sum of $65,000," and that a release of all claims asserted by Langston as to appellee's interest in said land was to be obtained by Slentz; the appellee's interest to be assigned upon compliance with the stipulations as to payment of income tax and the clearing of the title so far as the claim of Langston was concerned.

Slentz entered into negotiations with Langston for a release of appellee's interest in the land. After Langston had expressed a willingness to execute such a release for $50,000, one-half in cash and the remainder in bankable paper, he not to be bound until he received the cash and paper, and while appellants were arranging to comply with those terms, Langston released his claim as to the interests of the appellee and her two sisters for $100,000 in cash, which was furnished by A. R. Heintz, and a share in the oil to accrue to said interests. The attorneys for the appellee and her two sisters acted for them in effecting that settlement; a feature of the arrangement made being a transfer by the three sisters of a half-interest in their mineral rights to Heintz, who put up the money paid to Langston.

The granting of the relief sought was resisted on the grounds that the appellants failed to comply, or to be ready to comply, with their part of the contract within a reasonable time, that the provision as to payment of income tax was too vague and indefinite for the contract to be specifically enforceable, and that the appellants did not procure, or become entitled to, a release of Langston's claim to the appellee's interest. If the denial of the relief sought is sustainable on one of those grounds, the other grounds need not be considered.

In behalf of the appellants it is contended that their failure to obtain the release by Langston of his claim to the interest of which appellee was decreed to be the owner was due to the act of the latter in procuring a release by Langston of that interest when the appellants were ready, willing, and able to comply with their undertaking in that regard, that the appellee cannot rely upon a default which she herself caused, and that appellants, upon reimbursing the appellee for the outlay made by or for her to secure Langston's release, and paying the amount called for by the provision as to income tax, are entitled to a specific performance.

We are not of opinion that the evidence adduced required the conclusion that appellants would have obtained the release by Langston of the appellee's interest alone, but for the consummation of the transaction which resulted in his release of that interest, together with others. The appellants never acquired an enforceable right to a release by Langston. The evidence indicated that at one stage of the negotiation with Langston he indicated a willingness to release appellee's interest for $40,000, but that, when appellants offered to pay that amount, Langston declined to accept it, saying he would have to have $50,000. He remained at liberty to change his mind again. What happened shows that he preferred a settlement of the entire litigation in which he was engaged to a settlement as to a part only of his claim. It would

be a mere guess to say that, after it was disclosed to Langston that there was an opportunity for him to dispose of his entire claim for a satisfactory consideration, he would have released his claim to appellee's interest alone on the terms which the appellants arranged to comply with, if a compliance with those terms had been tendered before the disposition of the entire claim was effected. The evidence is not inconsistent with the conjecture that the appellants would have failed to obtain the release they sought, even if Langston had not made the settlement he did make before the appellants were ready to comply with the terms on which they expected to obtain the required release. The obtaining by the appellants of the stipulated release by Langston was a condition precedent to their acquisition of the right to the transfer contracted for.

"To entitle themselves to a decree for a specific performance of a contract to sell land it has always been held necessary that the purchasers should tender the purchase money. This is the rule in the ordinary case of a mutual contract for the sale and purchase of land. And the rule is still more stringently applied in the case of an optional sale, like the present one, where time is of the essence of the contract, and where Crowther could not have enforced specific performance. In such a case, if the vendee wish to compel the other to fulfill the contract, he must make his part of the agreement precedent, and cannot proceed against the other without actual performance of the agreement on his part, or a tender and refusal." Kelsey v. Crowther, 162 U. S. 404, 408, 16 Sup. Ct. 808, 810 (40 L. Ed. 1017).

It is not necessary to decide whether the just stated rule would or would not have been applicable in the instant case, if the inability of the appellants to perform their part of the contract had been shown to have been caused by the appellee. We are not of opinion that the evidence adduced required or warranted the conclusion that it was so caused, or that the appellants would have been able to comply with what was required of them if the settlement which Langston made had not been consummated before the appellants were ready to comply with the terms on which they expected to obtain the stipulated release, to which they never had any enforceable right. Even if Langston had not released his entire claim, the ability of the appellants to perform their part of the contract would have remained subject to the consent of a third person, until that consent was so given as not to be subject to be withdrawn at will. It cannot properly be said that the appellee caused the default by the appellants, as Langston's consent to make the transfer sought by the appellants remained subject to be withdrawn for any reason, or without any reason, and was withdrawn, under circumstances not disclosing whether Langston's change of mind would or would not have occurred, but for the consummation of the trade for the release of his entire claim.

The conclusion is that the court properly refused to decree specific performance of the contract. The decree is affirmed.