**SCM LAND COMPANY, Plaintiff and Respondent,**

**v.**

**WATKINS & FABER and Walter P. Faber, Jr., Defendants and Appellants.**

No. 19172.

Supreme Court of Utah.

Dec. 26, 1986.

Rehearing Denied Feb. 9, 1987.

W. Chris Wicker, Brian W. Burnett, Salt Lake City, for defendants and appellants.

Henry K. Chai, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Watkins & Faber ("Faber") appeals a judgment for damages for breach of a lease. Faber, a law firm, was the lessee of suite 606 in the Newhouse Building in Salt

Lake City, Utah, from 1967 until April 1981, when Faber vacated the building prior to the end of its lease.

On June 30, 1979, a prior lease expired, and on July 9, 1979, Faber executed a renewal lease agreement with Newhouse Office Building Company for suite 606 that was to run through June 30, 1982. Faber needed additional office space on the sixth floor to permit expansion of the firm. IML, Inc., occupied the remainder of the space on the sixth floor adjacent to Faber's suite on a month-to-month basis. IML had indicated that it intended to vacate that space and move to another floor in the building in approximately December 1979.

Faber contends that at the time the renewal lease was executed, Richard W. Fischer, then owner of the Newhouse Building, orally promised Faber that when IML moved, Faber could expand into the space vacated. However, all the specific terms for the additional space were apparently not negotiated. The written lease agreement did not mention an agreement to lease the IML space to Faber or the commitment of any additional space for Faber, even though the parties made a number of modifications by hand to the printed form agreement.

In September, 1980, Richard Fischer sold the Newhouse Building to the plaintiff, SCM Land Company. SCM, apparently without knowledge of Fischer's promise to Faber, thereafter leased the sixth floor, except suite 606, to IML pursuant to a long-term lease.

Although Faber alleged that Fischer had promised to "enter into a written lease agreement for additional space on the sixth floor by at least December, 1979," Faber made no demand for additional space until approximately nine months later.[1] At that point, SCM offered to lease the fourth floor to Faber, but that and other proposed arrangements were unacceptable to Faber. On April 1, 1981, approximately fifteen months prior to the expiration of its lease,

Faber moved out of the Newhouse Building. SCM filed suit for damages and attorney fees. The jury returned a verdict for SCM in the amount of $15,037 for lost rent and $400 for remodeling expenses. The trial judge awarded SCM $7,034.47 for attorney fees and costs. Faber appeals from the judgment entered on the verdict.

The trial court ruled as a matter of law that Faber had breached the lease. Faber defended on the ground that but for Mr. Fischer's promise to lease the IML space to Faber, Faber would not have executed the written lease. Faber contended that SCM's refusal to rent the IML space to Faber constituted a failure of consideration that terminated Faber's obligation to pay rent for the unexpired term of the lease. The trial judge submitted the case to the jury on a somewhat different basis, *viz.*, that if Fischer and Faber in fact had orally agreed to enter into a *written lease* for the IML space, the oral agreement constituted a condition precedent to Faber's obligations under the lease, and a valid defense to the lawsuit.

Over Faber's objection, the trial court instructed the jury that it should· return a verdict for SCM unless it found that:

1. Richard Fischer and Watkins & Faber entered into an oral contract to enter into a written lease for additional space on the sixth floor of the Newhouse Building.

2. If there was such an oral contract, the oral contract was intended by the parties to the contract to be a condition precedent to the written lease agreement for suite 606 becoming effective.

3. If there was such an oral contract, it was breached.

4. If there was such an oral contract and it was breached, the defendants acted within a reasonable time after it was breached to rescind the written lease agreement.

---

1. During this time, Walter Faber, managing partner of Watkins & Faber, had sustained a serious injury from which he was recovering. He did not carry on his routine office responsibilities during that time.

The jury returned a special verdict, finding: (1) Fischer and Faber had not made an oral contract to "enter into a written lease for additional space"; (2) even if there were such an oral contract, it was not "intended by the parties to the contract to be a condition precedent to the written lease agreement for suite 606 becoming effective"; (3) even if there were an oral contract, it was not breached; and (4) even if there were an oral contract and it was breached, the defendant did not act within a reasonable time after the breach to rescind or terminate the lease for suite 606. However, these findings must be viewed in light of another instruction the trial judge gave: "For an oral contract, if any, to be a condition precedent to a written lease agreement, the oral contract must have been intended by the parties to be fully performed before the written lease agreement was to become effective and binding."

On appeal, Faber argues that the trial court erred by not instructing the jury on Faber's defense that a breach of the landlord's oral promise to lease the sixth floor was a failure of consideration that justified Faber's terminating the written lease. On a cross-appeal, SCM contends that Faber was not entitled to its requested instructions because the trial court erred in admitting evidence of Fischer's oral statements that violated the hearsay and parol evidence rules and because the oral agreement between Fischer and Faber, even if it existed, was unenforceable under the Statute of Frauds.

At first blush, the jury's finding that the parties did not make an oral contract to enter into a written lease should be completely dispositive of this case, especially since Faber does not challenge that finding. But, given the instruction last referred to above, which limits the scope of the alleged oral contract that the jury was permitted to find, we cannot conclude that the jury's finding of no contract is necessarily dispositive. For that reason, we shall assume for purposes of discussion that Fischer and Faber made an oral agreement either to lease the IML space at some point after the beginning of Faber's new lease term or

that Fischer and Faber intended the oral agreement for the IML space to be an implied term of the written lease for suite 606 or, as Faber argues it, part of the lessor's consideration for the lease.

■ In either case, Faber's failure to obtain whatever oral promise or agreement it had with Fischer in writing made that agreement unenforceable under the Statute of Frauds. "Every contract for the leasing [of any real estate land] for a period longer than one year, ... shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease ... is to be made...." U.C.A., 1953, § 25–5–3. If the oral agreement was an agreement to enter into a future written lease for the sixth floor space and was intended to be a condition precedent to entering into the lease for suite 606, Faber was not entitled to have that theory put to the jury because of the Statute of Frauds, even though the trial judge did so. Thus, Faber got more than it was entitled to. An agreement to enter into a future real estate lease for a period longer than a year is within the Statute of Frauds, § 25–5–3, and must be in writing to be enforceable. In *Utah Mercur Gold Mining Co. v. Herschel Gold Mining Co.*, 103 Utah 249, 253, 134 P.2d 1094, 1096 (1943), the Court stated:

The contract to extend or renew the written lease for 5 years, was oral. It was tantamount to an oral contract to make a lease ... [and] is governed by the statute of frauds the same as if an oral lease was made. An oral agreement to make a contract which must itself be in writing is itself within the statute of frauds.

■ Faber's second theory, that the oral agreement to lease the IML space to Faber constituted consideration for Faber's executing the written lease and was an implied oral term of the written lease, fares no better under the Statute of Frauds. Faber has not sought reformation of the lease agreement or alleged mistake or fraud with respect to that agreement. Rather, it sim-

ply argues that it was justified in terminating its performance under the lease because of SCM's failure to lease Faber the sixth floor.

In essence, the argument is that the written lease was in effect modified to include a new term. However, it is settled law that a modification of a contract must be in writing if the contract that is modified must be in writing under the Statute of Frauds. *Golden Key Realty, Inc. v. Mantas,* 699 P.2d 730, 732 (Utah 1985); *Zion's Properties, Inc. v. Holt,* 538 P.2d 1319, 1322 (Utah 1975); *Coombs v. Ouzounian,* 24 Utah 2d 39, 41–42, 465 P.2d 356, 358 (1970); *Combined Metals, Inc. v. Bastian,* 71 Utah 535, 569, 267 P. 1020, 1032 (1928); 2 *Corbin on Contracts* § 301, at 89–90. Thus, an oral modification of a land sale contract to increase the amount of land subject to the contract is within the Statute of Frauds and must be in writing. *Norris, Beggs & Simpson v. Eastgate Theatres, Inc.,* 261 Or. 56, 64, 491 P.2d 1018, 1022 (1971); 72 Am.Jur.2d *Statute of Frauds* § 274, at 789–90. It follows that a lease modification must also be in writing if the modification would add additional space to a lease that is within the Statute of Frauds.[2]

Faber next contends that even if the oral agreement itself was unenforceable, its breach nevertheless constituted a failure of consideration that justified a rescission or termination of Faber's obligations under the written lease. Faber relies on *Nielsen v. MFT Leasing,* 656 P.2d 454 (Utah 1982), and *FMA Financial Corp. v. Hansen Dairy, Inc.,* 617 P.2d 327 (Utah 1980), for the proposition that there was a failure of consideration justifying rescission in this case. Both *FMA Financial Corp.* and *Nielsen* held that parol evidence was admissible to establish a defense that agreed-upon consideration had not been given by the plaintiff.

However, in this case, we have assumed without deciding that the trial judge did not err in admitting parol evidence of Fischer's promise.[3] Although *Nielsen* and *FMA Financial Corp.* support the ultimate result that Faber seeks here, i.e., rescission or termination of a contract, those cases do not involve the Statute of Frauds and they were decided on sufficiently different facts that they do not control this dispute.

■ Faber further argues that even if it is barred from specifically enforcing Fischer's promise for additional space, Faber may still rely on the breach of the promise to justify its termination of the written lease for suite 606 prior to the expiration of its term. The argument is not valid. To allow Faber to terminate on the basis of nonperformance of the alleged oral promise is contrary to Utah law.

■ An agreement to terminate or rescind a contract must be in writing if the contract that is extinguished falls within the Statute of Frauds. *See Allen v. Kingdon,* 723 P.2d 394, 396–97 (Utah 1986); *Cutright v. Union Savings & Investment Co.,* 33 Utah 486, 492, 94 P. 984, 985 (1908). We do not believe that breach of an unenforceable covenant that is wholly executory should be held to be a valid basis for a rescission when an express oral agreement to rescind is not sufficient to work a rescission.

■ Faber's next point is that the trial court erred in allowing statutory interest of 10 percent on the damages occurring after May 14, 1981, the date the statutory

2. We forego addressing the issue of whether a modification of a contract must be in writing because the basic contract must be in writing where the modification would not need to be in writing under the Statute of Frauds if it were an independent contract by itself. *See Norris, Beggs & Simpson v. Eastgate Theatres, Inc.,* 261 Or. 56, 491 P.2d 1018 (1971).

3. For a general discussion of the parol evidence rule, see *Union Bank v. Swenson,* 707 P.2d 663 (Utah 1985); *Eie v. St. Benedict's Hospital,* 638 P.2d 1190 (Utah 1981); *Bullfrog Marina, Inc. v. Lentz,* 28 Utah 2d 261, 501 P.2d 266 (1972); *Halloran-Judge Trust Co. v. Heath,* 70 Utah 124, 258 P. 342, 64 A.L.R. 368 (1927). See *Bushnell Real Estate, Inc. v. Nielson,* 672 P.2d 746 (Utah 1983), for a much stricter application of the parol evidence rule than was applied in *Nielsen v. MFT Leasing, supra,* and *FMA Financial Corp. v. Hansen Dairy, Inc., supra.*

rate was changed, because the lease that was breached was executed prior to May 14, 1981. Section 15–1–1 (Supp.1981) provided:

> The legal rate of interest for the loan or forbearance of any money, goods, or things in action shall be 10% per annum. But nothing herein contained shall be so construed as to in any way affect any penalty or interest charge which by law applies to delinquent or other taxes or to any contract or obligations made before the 14th day of May, 1981.

On this point, Faber is correct, and the judgment should be modified to allow 6 percent interest only, the rate in effect prior to May 14, 1981. Since SCM has not discussed what relevance § 15–4–4 may have to this issue, neither do we.

■ Finally, Faber contends that the trial court erred in improperly allowing SCM a credit of $1,434 in computing the extent to which damages had been mitigated. On this point, Justice Howe, Chief Justice Hall, and Justice Zimmerman agree with Faber. Norwest, another tenant of SCM's, moved into part of Faber's space when Faber vacated it, and the increased rent paid by Norwest for that space was credited to the amount owed SCM by Faber. The lease Norwest had on the space it previously leased, however, terminated two months short of when the Faber lease terminated. There is no express evidence that Norwest would have entered into a new lease on the old premises had it stayed there, and therefore, in the view of the majority on this point, those two months' rent on the old space should not have been credited to SCM. Since, however, the trial court found the issue to be an issue of fact and submitted it, along with the general issue of damages, to the jury, which found against Faber, Justice Durham and I would sustain the jury finding.

Therefore, under the majority view on this point, $1,434, or two months' rent on the old Norwest space, must be deducted from the judgment in favor of SCM.

Affirmed in part and remanded for entry of a new judgment in accord with this opinion. No costs.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.